**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| VIKEN DETECTION CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>VIDERAY TECHNOLOGIES INC.,<br><br>Defendant. | Civil Action No.<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT FOR PATENT INFRINGEMENT

## NATURE OF THE ACTION

1. This is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. § 1 *et seq.*, brought by Plaintiff Viken Detection Corporation ("Viken") against Defendant Videray Technologies Inc. ("Videray") for infringement of United States Patent No. 12,718,966 ("the '966 Patent"), entitled "X-Ray Chopper Wheel Assembly and Method."

2. The '966 Patent was duly and legally issued on August 25, 2026, and names Peter J. Rothschild as the inventor. Viken is the assignee and current owner of all right, title, and interest in the '966 Patent, including the right to sue for and recover damages for past, present, and future infringement. A true and correct copy of the '966 Patent is attached as Exhibit A.

3. The '966 Patent is a continuation of U.S. Patent Application No. 17/454,993 (now U.S. Patent No. 11,776,706, "the '706 Patent"), which is a continuation of U.S. Patent Application No. 16/935,787 (now U.S. Patent No. 11,200,998, "the '998 Patent"), which is a continuation of U.S. Patent Application No. 15/946,425 (now U.S. Patent No. 10,770,195, "the

'195 Patent"), which claims the benefit of U.S. Provisional Patent Application No. 62/482,064, filed April 5, 2017 ("the '064 Provisional"). All of these patents name Dr. Peter J. Rothschild as the inventor, and Viken is the assignee and current owner of each.

4. Viken has previously asserted the '195, '998, and '706 Patents as Plaintiff-in-Counterclaim against Videray in Civil Action No. 23-cv-13035 (D. Mass.) (the "Existing Action"). The '966 Patent had not yet issued at the time the counterclaims in that action were filed. Discovery is complete in the Existing Action. Viken brings this separate action to assert its rights under the newly issued '966 Patent.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1338(a) because this action arises under the patent laws of the United States, 35 U.S.C. § 1 *et seq.*

6. This Court has personal jurisdiction over Videray because, on information and belief, Videray has committed acts of infringement in the District of Massachusetts, the acts giving rise to the claims made herein occurred within Massachusetts, Videray's principal place of business is located within this judicial district, and Videray brought the Existing Action in this District.

7. Venue is proper in this district under 28 U.S.C. § 1400(b).

## PARTIES

8. Viken is a corporation that is incorporated in the State of Delaware and has its principal place of business in Burlington, Massachusetts.

9. Upon information and belief, Videray is a Delaware corporation with its principal place of business at 529 Main Street, Suite 100, Boston, Massachusetts 02129. Upon

information and belief, Videray was founded in August 2017 by Paul Bradshaw ("Bradshaw"), a former Viken employee.

## FACTUAL BACKGROUND

### Viken's Business and Technology

10. Viken, a Massachusetts small business, develops and sells advanced threat detection technology used by security, defense, inspection, and law enforcement personnel worldwide. After investing tens of millions of dollars and years of effort, Viken introduced the world's first handheld backscatter X-ray scanner capable of penetrating vehicle steel to detect hidden contraband; the world's first handheld ion mobility spectrometry analyzer capable of identifying fentanyl in the small but fatal concentrations typically found in smuggled pills and powders; and the Osprey-UVX, the world's first drive-through under vehicle backscatter X-ray portal, enabling law enforcement to see the hardest-to-locate threats and smuggled drugs, weapons, and cash in passenger vehicles.

11. Viken has deployed thousands of its handheld X-ray products, including its lead-in-paint analyzer used throughout American cities to protect people from lead poisoning.

12. Viken's customers include domestic and foreign military forces, state and local law enforcement, United States federal agencies ranging from the U.S. Department of State to U.S. Department of Energy, and border security agencies in dozens of countries.

13. Central to Viken's U.S. security mission is its relationship with United States Customs and Border Protection ("CBP") to find fentanyl – 90% of fentanyl seized is from vehicles entering the United States at legal ports of entry – and other deadly illicit narcotics, explosives, and contraband. CBP makes announcements almost daily regarding the use of Viken's detection technology to interdict dangers to the United States.

**Viken's Patented Technology**

14. Viken's handheld X-ray scanners include the HBI-120, the Nighthawk-HBI, and the Nighthawk-BTX (the "Viken Scanners"). The Viken Scanners form X-rays in what is called a "pencil beam" formation, by chopping a single wide "fan" beam into much narrower "pencil" beams. An apparatus called a "chopper wheel," located between the X-ray source and the output side of the device, performs this chopping function by blocking all but a small amount of X-rays as it spins. Each pencil beam illuminates a point on the scanned object, which then "scatters" X-rays back to the X-ray detectors on the scanner. Processors then combine the data from the detectors to create a distinctive, photo-like image of objects concealed beneath the surface.

15. Prior to Viken introducing the HBI-120, handheld X-ray scanners had limited use in law enforcement. Earlier products used X-ray tubes with insufficient power to penetrate vehicle steel. Even at these low power levels, the scanners required heavy metallic shielding on all sides to prevent X-ray leakage, which could generate unnecessary radiation exposure to users as well as image degradation. For law enforcement undertaking lengthy inspection periods, the weight caused by heavy metallic shielding made these handheld scanners unattractive, particularly for the quality of images they generated.

16. Applying substantial development effort and its principals' decades of experience, Viken solved the shielding problem to enable lightweight scanning even while using a more powerful X-ray tube. Viken's innovation, referred to as an "open geometry chopper wheel," was that, by placing a small amount of X-ray blocking material, called a "scatter plate," very close to the chopper wheel that also comprises X-ray blocking material, the Viken Scanners could confine X-rays between the two volumes of X-ray blocking material, without using prohibitive amounts of shielding. Based on these features, among others, Viken became the worldwide leader in handheld "backscatter" X-ray inspection and enabled law enforcement throughout the

U.S. and world to better protect their communities from trafficking in fentanyl and other dangerous contraband.

17. Viken applied for and received several patents for the technology embodied in the Viken Scanners including the patents asserted in the Existing Action and the '996 Patent. These patents share the same inventor, Dr. Peter J. Rothschild.

18. The '966 Patent, entitled X-ray Chopper Wheel Assembly and Method, was duly and legally issued on August 25, 2026, and names Peter J. Rothschild as inventor. The '966 Patent issued from U.S. Application No. 18/475,703, filed September 27, 2023. Viken is the assignee and current owner of the '966 Patent.

19. Significantly, as indicated on pages 3-5 of the '966 Patent (Exh. A), all of the prior art alleged by Videray to invalidate the patents asserted in the Existing Action was considered by the Patent Examiner before he allowed the '966 Patent. Included in that alleged prior art is the Mini-Z, which was the basis for Videray's inequitable conduct allegations in the Existing Action.

**The Accused Products**

20. On information and belief, Videray makes, uses, sells, and offers to sell handheld scanners called the PX1, PX Lite, and PX Ultra ("the Accused Products"). Upon examination of a PX1, Viken discovered that the PX1 infringes the '966 Patent. On information and belief, the PX Lite and PX Ultra include the same infringing features as the PX1 and therefore infringe the '966 Patent as well.

**Videray's History and Knowledge of Viken's Patents**

21. Viken employed Bradshaw, the founder of Videray, as a mechanical engineer beginning on or about November 2013. Bradshaw also held an ownership interest in Viken.

22. As a condition of his employment, Bradshaw executed an employment agreement (the "Employment Agreement"). In the Employment Agreement, Bradshaw agreed to "promptly disclose to the Company ... all ... inventions ... made or conceived or reduced to practice or learned by me, either alone or jointly with others, during the period of my employment that are related to or useful in the business of the Company ...." Bradshaw further agreed that "all Inventions will be the sole property of the Company ... and that the Company (or its designee) will be the sole owner of all patents, copyrights, and other rights in connection therewith."

23. Part of Bradshaw's duties at Viken was to develop a handheld X-ray product designed by Viken's founder Peter Rothschild. Bradshaw knew about the inventions described in the '064 Provisional.

24. On information and belief, while still employed by Viken, Bradshaw planned to leave Viken to start a company that would sell a competing handheld X-ray product.

25. Bradshaw was terminated in or around May/June of 2017.

26. About two months after leaving Viken, Bradshaw formed Videray (formerly NarcRay Technologies, Inc.).

27. While employed at Viken, Bradshaw collected confidential Viken customer, employee, and technical information, transferred that confidential information to one or more personal cloud storage accounts, and unlawfully used this information to start Videray and sell the PX1 handheld scanner. At all relevant times Bradshaw had knowledge of the inventions described in the'966 Patent at least due to his work on the HBI-120 and initially being named as an inventor on the '064 Provisional Application.

28. On or before June 24, 2022, Videray had actual and/or constructive notice of the '195 and '998 Patents. On or before September 19, 2023, Videray had actual and/or constructive

notice of the ‘706 Patent. Given Videray’s knowledge of the ‘195, ‘998, and ‘706 Patents—all of which are in the same patent family as the ‘966 Patent—Videray knew or should have known of the ‘966 Patent upon its issuance on August 25, 2026.

29. Videray and Tek84, Inc. commenced the Existing Action by filing a complaint for declaratory judgment of non-infringement and invalidity of the ‘195, ‘998, and ‘706 Patents. Viken filed counterclaims for patent infringement, breach of contract, and rescission of contract. Notwithstanding this extensive prior litigation over the very same patent family, Videray has continued to make, use, sell, and offer to sell the Accused Products in the United States.

**COUNT ONE**
**(Infringement of U.S. Patent No. 12,718,966)**

30. Viken repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

31. The ‘966 Patent is valid, enforceable, and was duly issued by the United States Patent and Trademark Office on August 25, 2026.

32. Viken is the owner by assignment of all right, title, and interest in and to the ‘966 Patent, including the right to assert all causes of action arising under said patent and to collect and retain any and all damages for infringement thereof.

33. Videray has been and continues to directly and indirectly infringe at least Claim 29 of the ‘966 Patent by making, using, selling, or offering for sale in the United States, or importing into the United States the Accused Products, in violation of 35 U.S.C. § 271(a), both literally and/or under the doctrine of equivalents.

34. By way of example, Claim 29 of the ‘966 Patent recites:

> *An x-ray chopper wheel assembly comprising:*
>
> *a chopper wheel (i) defining at least one opening, configured to pass x-ray radiation from an x-ray source at a source side of the chopper wheel to an*

> *output side of the chopper wheel, and (ii) having a solid cross-sectional area in a rotation plane thereof, the chopper wheel configured to absorb x-ray radiation from the x-ray source; and*
>
> *a plate having a solid cross-sectional area, in a plane parallel to the rotation plane of the chopper wheel, that is substantially smaller than the solid cross-sectional area of the chopper wheel, the plate disposed in a plane substantially parallel to the rotation plane of the chopper wheel and arranged relative to the chopper wheel to limit x-ray radiation scattered therefrom to no more than 10% of scattered radiation.*

(Exh. A, c.17, ll.5-19.)

35. The Accused Products satisfy each and every limitation of at least Claim 29 of the '966 Patent. The Accused Products incorporate a chopper wheel assembly that includes a chopper wheel defining at least one opening configured to pass x-ray radiation from an x-ray source at a source side of the chopper wheel to an output side of the chopper wheel, the chopper wheel having a solid cross-sectional area in a rotation plane thereof and configured to absorb x-ray radiation from the x-ray source. The Accused Products further include a plate having a solid cross-sectional area, in a plane parallel to the rotation plane of the chopper wheel, that is substantially smaller than the solid cross-sectional area of the chopper wheel, the plate disposed in a plane substantially parallel to the rotation plane of the chopper wheel. The line collimator of the Accused Products is a plate that is arranged relative to the chopper wheel to limit x-ray radiation scattered therefrom to no more than 10% of scattered radiation.

36. Videray has also indirectly infringed and continues to indirectly infringe the '966 Patent by actively inducing infringement under 35 U.S.C. § 271(b). On information and belief, Videray has had knowledge of the '966 Patent and the patent family from which it issued, including through the Existing Action in which the '195, '998, and '706 Patents have been asserted against Videray. Despite this knowledge, on information and belief, Videray has knowingly and intentionally induced others, including its customers and end users, to use the

Accused Products in a manner that infringes at least Claim 29 of the '966 Patent by, among other things, selling the Accused Products with instructions and promotional materials that encourage and facilitate infringing use.

37. Videray's infringement has been, and continues to be, knowing, intentional, and willful. Videray has been aware of the Viken patent family covering the chopper wheel assembly technology since at least June 24, 2022, when Videray received notice of the '195 and '998 Patents. Videray received further notice of the '706 Patent on or about September 19, 2023. The '966 Patent is a continuation of the same patent family and claims the same priority date. Videray's founder, Bradshaw, is a former Viken employee who had intimate knowledge of Viken's chopper wheel technology. Despite its knowledge of Viken's patent rights, Videray has continued to make, use, sell, and offer to sell the Accused Products in willful disregard of Viken's patent rights.

38. Videray's acts of infringement of the '966 Patent have caused and will continue to cause Viken damages and irreparable harm for which Viken is entitled to injunctive relief, compensation including lost profits, and treble damages pursuant to 35 U.S.C. §§ 283 and 284.

39. This case is exceptional and Viken is therefore entitled to an award of attorney fees pursuant to 35 U.S.C. § 285.

## PRAYER FOR RELIEF

WHEREFORE, Viken Detection Corporation respectfully requests that this Court enter judgment against Videray Technologies Inc. as follows:

a. Adjudging that Videray has infringed the '966 Patent;

b. Finding that Videray's infringement has been willful;

c. Granting a preliminary and permanent injunction enjoining Videray, its employees, agents, officers, directors, attorneys, successors, affiliates,

subsidiaries, and assigns, and all of those in active concert and participation with any of the foregoing persons or entities from infringing, contributing to the infringement of, or inducing infringement of the '966 Patent;

d. Ordering Videray to account for and pay damages adequate to compensate Viken for Videray's infringement of the '966 Patent, including at least a reasonable royalty for past and ongoing infringement, lost profits, and pre-judgment and post-judgment interest and costs, pursuant to 35 U.S.C. § 284;

e. Ordering that the damages award be increased up to three times the actual amount assessed, pursuant to 35 U.S.C. § 284;

f. Declaring this case exceptional and awarding Viken its reasonable attorneys' fees, pursuant to 35 U.S.C. § 285;

g. Awarding Viken its costs of suit; and

h. Awarding such other and further relief as this Court deems just and proper.

**REQUEST FOR JURY TRIAL**

Viken demands a trial by jury on all claims and issues so triable.

Dated: September 11, 2026

Respectfully submitted,

*/s/ Christopher S. Schultz*
Christopher S. Schultz (BBO #630814)
Laura L. Carroll (BBO #076180)
ARENTFOX SCHIFF LLP
Prudential Tower
800 Boylston Street
Boston, MA 02199-8004
(617) 973-6100
christopher.schultz@afslaw.com
laura.carroll@afslaw.com

*Counsel for Plaintiff Viken Detection Corporation*